Case number 16-1593, Ahmed Selim Bin Jabar, personal representative of the estate of Selim Bin Ali Jabar, by his next friend Faisal Bin Ali Jabar, and Issam Abdullah Abdul Mahmoud Bin Ali Jabar, personal representative of the estate of Waleed Bin Ali Jabar, by his next friend Faisal Bin Ali Jabar, appellants, v. United States of America. Mr. Robinson for the appellants, Ms. Allen for the appellees. Good morning, Your Honor. May I proceed? Yes. My name is Jeffrey Robinson, and I'm here on behalf of the plaintiffs' appellant in this action. And this is a really important action for this court. The fundamental question presented by the decision below, and by the is whether or not, whenever the United States says that a claim touches on foreign affairs or military affairs, the courts must abandon their responsibilities to review real claims about whether or not the executive's actions have complied with international and U.S. law. That is a remarkable assertion. It is an assertion which is not required by this court's precedent. It is an assertion which is at odds with the fundamental structure of our government. It is particularly remarkable in this case because the government asked this court to abandon its responsibilities without the government having ever first had to put forward any evidence, any suggestion, any statement that the court's exercise of its responsibilities would actually intrude upon the foreign and military affairs operations that the political question doctrine is designed to protect. So, for example, in El Shifa, this court's most important decision with respect to this area. That was about a presidential decision to retaliate for the bombing of a United States embassy. Embedded in this claim that the plaintiffs were trying to make there was a question about the legitimacy of a presidential decision to retaliate with respect to an embassy bombing. We knew that that's what the decision was about because the president had actually submitted a War Powers Act letter to Congress about it. The record was full and clear about what was happening. And then the plaintiffs asked the court to say, well, no, question whether or not what the president and the full force of the United States government had done was appropriate. So is that the main distinction that you would have us draw with El Shifa is that there had been a public statement by the president? No, I think that is an added distinction. It's not so much that it is a public statement. It is that in the record, the court knew what it was being asked to refrain from doing. The court said, oh, the president here has said that in this instance, this was an exercise of our power. That's all there for the court to understand. We're going to, as a prudential matter, stay away from examining that. Here, we don't even know who all the John Doe defendants are yet. We have some of the people at the beginning, and the United States has exercised a Westfall with respect to the few named defendants. But we don't have a statement that, in this case, there was a presidential decision to target this person. Even if we don't have the records, we don't have an in-camera submission. We don't have anything. But the complaint alleges that this was carried out as a signature strike. Yes. So the theory of the complaint is that this is a drone strike that was carried out with the coordinated action of the defendants, who include the director of the CIA, the Secretary of Defense, and the president. It alleges that this was an action which was done pursuant to those defendants and with their complicity. But it doesn't go further. The government hasn't come back and said either, yes, it was, or no, it wasn't. The government hasn't come back and said, no, this is something. This was different. And so the court is being essentially asked to step back without knowing what it's being asked to step back from. And that, I think, is shifting the balance with respect to the If we were here now saying, using drones to strike, questioning the wisdom of a policy choice about using drones in Yemen, the court would have concerns. And we'd understand why the court might be thinking political questions. Mr. Robinson, I don't entirely understand the line between questioning the wisdom and questioning the legality when the legal standards that you would have us apply have to do with things like proportionality. Isn't proportionality kind of a contextual judgment call about what amount of force in what context is appropriate to achieve the national security objectives of the United States? It involves judgment, but it is a legal standard of the type of judgment. So just earlier, this court, earlier today, the court was talking in the search and seizure context, where there are lots of judgment calls and things, but that there are standards and guidelines. Similarly in international law, international courts, the courts in Israel and elsewhere, apply standards about what is or isn't proportional to evaluate what is distinct and other things. In fact, the United States does. So this is what's sort of I'm sorry, Mr. Robinson. I understand your position to be, this is not a political question. To the extent that there may be issues of confidential national security information that cannot be, the disclosure of which cannot be forced, that should happen later on, not at the threshold that's in the packaging of political question. The state secret would be a different effect. Right, later on, and it's not at the threshold of jurisdictional determination. So we sit here with, you know, knowing that you have the Supreme Court's Petoskey decision supporting that view, a view that less of these concerns should be dealt with at the political question threshold stage. But we also are bound by our circuit rule en banc in El Shifa, and a line of consistent precedent trying to, among other things, apply the Torture Victim Protection Act and the ATS, and our court saying, no, those are too much to do with political questions. So do you, are you asking us in light of Petoskey to abrogate circuit precedent as no longer valid? I am not asking this court to do that. This court might choose to do so, but I don't think that's what's necessary. It's why I started out this argument talking about El Shifa and talking about how this is different. We don't, cases, in some of them, so getting into this, this is about the judicial legal function. And if we look at it like judges and lawyers and apply it step by step, I think it works. And so El Shifa has some statements, but what is El Shifa really about? It's about a set of facts applied, looked at, and evaluated under the doctrine. The facts, the circumstances where that court was are very distinct from where we are here now. How distinct are they? Because it sounds to me like there's two distinctions you're drawing with El Shifa. One is that there you had a presidential public determination that was something that could be, that was already as a predicate here. You don't have something like that that's been publicly acknowledged. And then secondly, that there's something different about the theory of recovery in El Shifa from the theory of recovery here. As to the latter, there were legal standards to be applied in that case too. They were statutory claims that incorporated international law principles. And the court still said even though that's a statutory cause of action that incorporates an international law norm, it's not something we're going to look at. And here it's also a statutory cause of action that incorporates an international law norm, which would be a legal standard. But the question is, as I understand it from El Shifa, does the nature of the issue raised by the norm cause us to look at the substantive merits or demerits of the decision to undertake this military targeting mission? At that level, they seem similar? But I think they're distinct in that El Shifa is sort of in this one-off world that we used to be in. And this case is in the world we live in now, where we have a defined, publicly acknowledged, discussed program of using drones against persons who we believe threaten us in Yemen. We have the president having rules about it. We have the president earlier this month releasing a long statement about this is what we do, this is how we do it, this is how we apply the law, this is what we're doing. It's remarkable when they apply the law, when they figure out targeting. You know who they have in the room? They have lawyers from the judge advocate generals are part of the people who they have in the room. And to some extent that cuts against you, Mr. Robinson, because there's law that applies to the Department of Defense, the all of which is traditionally enforceable. I'm heartened, not discouraged, by the notion that internally the government is getting legal advice. They have experts in humanitarian law, they have experts in international human rights law, and they're seeking to carry out even their covert actions in accordance with that law. But to me, the fact that there are legal standards there doesn't necessarily get you out from under El Shifa. I mean, I'm actually a little bit surprised that you aren't relying more on Zivotofsky for that to pry you away. Because, for example, in Schneider v. Kissinger, which is another one of our circuit cases by which we are bound, TVPA, ATS, you know, same standards, no? But part of the political question doctrine comes out of this notion of interference and involvement. And here, what you're being asked, what we are is to apply the same sorts of rules and standards. So Drogoski says it doesn't directly address the D.C. circuit precedent, it doesn't say, it doesn't overrule it, which is why I want to be cautious about that. But it tells us that the Supreme Court may not be as enamored of the political question doctrine as lower courts who, you know, operating under some different pressures have been. And so that is understandable. I think it cuts back, and what I'm asking this court to do, and I think if you look at the Fourth Circuit's recent case as well, there are ways of harmonizing and stepping back from that, which move things forward, which allow courts to apply the rules that courts apply, but that don't raise the concerns undermining the political question doctrine. Concerns, which Drogoski tells us, can sometimes be overstated. Can I change the subject a little bit and ask you about standing? Well, that's where I was going, so that's fine. Well, no, I just, we jumped right into the merits here, and so I wanted to step back from that a bit and start with the question of whether this, whether we have jurisdiction. Do, you know, do we have a standing problem here? Your Honor, I think when we jumped into the political question aspect of jurisdiction, and I think that there is not a standing question here. The plaintiff who's before you as next friend, as the court below finds, is the appropriate person. He is, he is someone who can be here and can make the arguments on behalf of people who just can't be, and he's appropriately situated to do so. Okay, before we get to the next friend, I want to ask you about Lyons and just the fact that they're seeking declaratory relief, and so. I mean, Your Honor, as you say, declaratory relief is available under the statute. Obviously, this court has some ability to discretionarily refrain from granting some relief, but this is the appropriate type of relief here because it is, in some senses, it is the least interfering and the most respectful of the coordinate branches. It is that this court's ability, legislatively granted, to actually give declarations and to talk about the law, which is within its competence, is a useful way, and one where the court shouldn't back away from actually acting. I appreciate that the the complaint is framed in a way that's, that is trying to be less interfering, but the Lyons concern, I'm going to just follow up from Judge Brown's question, the Lyons concern is that where what the complaint seeks is injunctive or declaratory relief, in other words, future looking, the plaintiff does not have standing because there's, the plaintiff has not shown a sufficient likelihood of future injury, and our court has applied the Lyons logic, which in Lyons was in the context of injunctive relief, has applied that to declaratory relief as well in Haas and Ruth v. Holder, and so the problem for us is that we don't see a basis here for a declaratory relief case to go forward on behalf of plaintiffs who have no prospect of being harmed in the future, unfortunately, because they're deceased. And I think, Your Honor, if that had been raised at, and the district court had relied on it and dismissed on that ground, we would have been given an opportunity to. It's subject matter jurisdiction, you know that, Mr. Robinson. No, you're talking about amending though, right? Yes, yes, given an opportunity to amend, given the status that the next friend has with respect and the responsibilities under the law with respect to not only the personal representatives, but the children and family and protection, we would, we believe we would have been able to craft an amendment which dealt with the future looking aspect. There's no amended complaint in the record, and as I understand the local rules, the motion seeking leave to amend has to be accompanied by a post-amended complaint, and that was not done. Because the action wasn't, the action was dismissed without reference to this, that, it wasn't dismissed on the standing ground. It wasn't, that's not what the court said, so we weren't in a position in responding there. There was a footnote talking about it, but because the court took the political questions doctrine as jurisdictional, it resolved it first, and that's how it decided the case. What would you do differently? Let's just hypothesize that there could be a different complaint. With respect to the declaratory, I mean, I think one would say, one would talk about and add the children and other relatives for whom the deceased are responsible and have, whose, their estate to prepare for, as persons who reside in an area which is a source of active hostilities, where there are ongoing strikes, and the notion that a declaration that, that the strikes that happened in the way in which they happened were illegal, might serve very much to protect them from future act, from future harm. What about retrospective? Yeah, that's what I was going to say. Is declaratory relief it, or is there backward looking relief? In terms of, I mean, I think we have thought about, but I don't have a definitive answer on whether or not there would be a claim for retrospective relief. There are obviously court claims and sovereign immunity related issues that come into there, and so it would have to be careful. We're walking the line between it, trying to do something that achieves relief and protection for people, but that is respectful of the court's limitations and the roles that it can play. You mentioned earlier that declaratory relief is available under these statutes, and I actually just wasn't familiar with that. You don't have sites for, I would look for that. I don't, Your Honor. Thank you, Judge Brown, and may it please the court. We don't think that the plaintiffs have standing here, but I would like to start out by talking about the political question doctrine. The plaintiffs here are challenging a missile targeting decision by the president, an alleged missile targeting decision by the president, that their claims fall within the core of the political question doctrine, and they're squarely governed by this court's holding in Al-Shifa. In that case, this court held the courts cannot second guess the president's determination that a missile strike was justified, and that's exactly the sort of declaration that the plaintiffs are asking for here. They're challenging the executive's alleged determination about whether the targets of the strike posed a threat and about whether there was some other means to, better means to neutralize that threat. So you're saying alleged determination for reasons like we can understand, but there is a difference between Al-Shifa and this case, because in that situation, there was no alleged overlay. That's correct, Your Honor, and I have two responses to the plaintiff's attempt to distinguish Al-Shifa on that ground. First of all, there were two claims in Al-Shifa. One was a defamation claim, and that claim, you know, did hinge on the fact that the president had given specific reasons for the strike, but the other claim, the claim that there was a violation of international law because it was an unjustified taking of their property, that did not hinge on whether the president had a statement about the justification for the attack. The second response is that it would be, we think it would be backwards to say that in a case where the government has neither confirmed nor denied allegations of the use of force abroad, that in that case, it would likely, might involve classified information, that that sort of case is somehow more justiciable than a case in which the president has publicly discussed the events. What about the notion that the Supreme Court has basically said, yes, in Zivotofsky, yes, there are serious separation of powers concerns, there are, you know, substantial executive prerogatives, but we don't package that as a political question. We look at that in a more contextual way, not at the threshold as a question of subject matter jurisdiction. I find that somewhat hard to square with Al-Shifa, notwithstanding several efforts to do that. Well, Your Honor, I think Zivotofsky presented the court with a very different question than the plaintiff's claims present the courts with here. In Zivotofsky, the question that was before the court was whether the statute was constitutional on its face. And here, if you look at the particular claims brought by the plaintiffs, the questions that are before this court are, for example, you know, whether there was an urgent military purpose that justified the strike at JA-10, or, you know, whether the targets of the alleged strike pose any threat, much less an imminent one, against the United States at JA-37. You know, those determinations are exactly the types of determinations that the political question doctrine is designed to keep courts out of, and they're just very different than the question that was before the court in Zivotofsky, which was as... I don't really take that to be the principal reasoning of Zivotofsky, that we're looking at something where it's facial versus where it's as applied, rather that we're looking at something where, you know, instead of saying this whole field of action is just going to be off limits, we're going to look at, well, what field of action are we really talking about, and which presidential power are we really talking about? And, you know, it may be, as in Zivotofsky, that quite quickly after the political question threshold is cleared, that the court says, oh, yeah, we see this is a field of action that we're not equipped to adjudicate. But I guess I'd wonder whether that really makes sense. In a way, that almost seems inverted, that the courts can do more facial work and not. Well, Your Honor, another way of putting it, in Zivotofsky, the court could answer the question about whether the statute was constitutional without addressing the issue that raised a political question, which was whether Jerusalem should be recognized as in Israel on a passport. And so the court could answer the constitutional question without answering the political question. Here, that's not the case. The plaintiff's claims in the complaint make clear that to adjudicate their claims, the courts would have to decide the various sensitive political judgments that this court and the Supreme Court have made clear are textually committed to the political branches. And that includes both the threat posed by the alleged targets of the strike, the best way to neutralize such a threat. Those types of determinations involve, you know, evaluating sensitive national security information, making predictive judgments about the capability. They could. They could. I mean, the plaintiffs hypothesize, well, at least it's possible that once the government has to answer, the government will not raise those kinds of arguments and say, you know, we're really sorry, we made a mistake. And if they are unable in the sort of the good conscience and the proper functioning of the government to claim that there really was a bona fide national security interest in what they did, then the plaintiffs say, well, we're entitled to know that. Well, Your Honor, this court has repeatedly stated that the political question doctrine is a limit on jurisdiction. And it's something that's resolved at the outset. And this court has affirmed numerous decisions in which cases were dismissed on that ground. Can you do your Zivotofsky answer again? You said that in Zivotofsky, there's a difference because there you could answer one question without answering the other. Sure. In Zivotofsky, the court could answer the constitutional question about whether the statute infringed the president's authority without answering the politically sensitive question about whether Jerusalem was located in Israel. Here, the court can't adjudicate the plaintiff's claims without addressing the political questions about whether there was a threat posed by the... So if you had a statute, if Congress enacted a law that said no drone strikes where there's any possibility of civilian casualties, let's just say they said in Yemen. And then the claim was that this was a strike that was a violation of that statute. Then under Zivotofsky, there would be no problem with addressing the constitutionality of that statute. So Your Honor, the Supreme Court has directed courts to look to the particular claims raised by the plaintiffs in a case and see whether those particular claims raise political questions. I think in the statute that the hypothetical you're proposing, you're trying to avoid any of those sorts of political judgments. If it's true that a statute truly didn't raise any, that the claims under that statute truly didn't raise any of the political questions that are raised here, then it might be, it would be more similar to Zivotofsky in which perhaps the court could address a constitutional issue without addressing those sensitive political judgments. But here, that's not the case. I mean, there are hard hypotheticals, but we think this case is very straightforward. In this case, it's clearly within al-Shifa and clearly within the core of the political question doctrine because the plaintiff's claims here, just looking at the complaint, it's clear that the plaintiff's claims raise precisely those types of judgments that the political question doctrine keeps courts out of and that courts are not well suited to make. I'm trying to sort of figure out what we have to decide and what we should decide. This is a case that raises many different issues that are challenging. Do we have a choice to decide a jurisdictional aspect of the ATS or the TVPA claim under Steele Co. and Rogas or are our only options and or obligations to decide standing and or political question? Well, Your Honor, I think if you're referring to jurisdictional issues regarding the statutory claims, I think if they're jurisdictional, I think the court could- Well, are they? That's what I'm asking you. Oh, sorry. Well, I think, let's see, with respect to the TVPA, sorry, the plaintiff's statutory claims are sort of cobbled together with a number of different statutes to try to avoid the jurisdictional barriers. I think- So the TVPA, they're saying that U.S. officials are acting under color of foreign law and therefore the textual limitation in the TVPA to defendants acting under color of foreign law applies and you're saying no, they're acting under color of U.S. law and TVPA doesn't apply. Is there anything about that that's jurisdictional that would permit us to reach that? Well, I think, Your Honor, maybe a different aspect that applies to both claims and is related to something that the appellant brought up is declaratory relief is not available under the TVPA and with respect to the ATS, this court held in Sanchez-Espinoza that granting declaratory relief to ATS claims in a similar sensitive foreign policy arena would be an abuse of discretion and so declaratory relief wouldn't be available there. That doesn't sound jurisdictional though. Are you saying that it is? Are you saying that that's an equally attractive alternative to standing or political question? Well, Your Honor, merely that the- because the type of relief that they're seeking is not available, you know, we don't think that they're- even if they had injuries that would provide standing, the type of relief that they're seeking isn't available so it's unclear what this court could do that would redress their injuries. The fact that- That's part of the standing inquiry. You're saying that- I didn't- I did not read your brief to be saying that that was part of the standing inquiry, but maybe I just mis- Well, Your Honor, I think that there's a much clearer standing argument here. I mean, it's important to remember that the plaintiffs are the estate of the deceased and, you know, we think that the allegations that they didn't- that they've included really in their brief are too speculative about whether there is, you know, a threat of another missile strike that's happening. I think what Judge Hildreth was getting at, though, was that at least with those, and I know you have responses to this, but there's- there is the possibility of repleting, at least there's- that's been raised. With some of the other arguments you've made about the TVPA and the ATS, there's not a possibility of repleting to deal with them, but the question is, are those jurisdictional arguments that are actually alternatives to standing or political question or are they merits arguments that you can't get to until you conclude that this case neither raises a political question nor has a standing problem? Yes, Your Honor, and I think- I guess I'm not exactly sure. I mean, the fact that declaratory- we think that declaratory relief is not available in this situation under either statute. We think there's other problems with the statutory claims, including that, you know, the AT- for the ATS claims, the individual plaintiffs were substituted for the United States and the plaintiffs didn't challenge that on appeal and then the claims were converted to an FTCA suit and there is no jurisdiction because the FTCA's waiver of sovereign immunity doesn't apply here since they haven't satisfied a number of the requirements of that. So, if the court were to rule on that ground, that would be jurisdictional, but it's less clear with the TV- with the TVPA claims. But just to get back to standing for a moment, you know, we- we think it's too speculative. We don't think that- we think it's too speculative that there will be future attacks in the area that would- would threaten these people, but it's important to remember that the claim is brought by the estate and it's unclear how an estate would even- how- how, you know, what- what it would redress to have a declaration, you know, for the estate. What it would- it's unclear how the estate is being- is being injured going forward by future attacks and even if they amended their complaint to add family members, it was- in addition, it's unclear how the- the particular declaration that they seek would redress that injury because the declaration that they're seeking is a very fact-specific declaration. That seems very problematic. What about, though, a claim for damages, nominal damages, supplemental damages beyond what they allege? They were given some kind of apology payment and they could- they could allege nominal damages. Yeah, well, they could- so they've said that they would allege- like to- at some point, they said they wanted to add nominal damages for their TVPA claim. We think that TVPA claim runs into other difficulties. As- as this court has said in Saleh and Dovey-Rumsfeld, there are no suits against U.S. officials. The- the- the defendants here were not- We're having to sort of sort out what guidance to give to the district court and what guidance we may give to the district court and what guidance we must give to the district court. So, yeah, they might run into trouble further down the line. But in terms of repairing the standing concern, presumably they could repair it by asking for some amount of retrospective relief? On the TVPA claims? Yeah. That would- that would- if they- if they were seeking retrospective relief, that would get around the- the standing problem with their- with their current lawsuit. But again, just to be clear- Why not return it to ATS if they were to- just for the purpose of standing? Oh, sorry, Your Honor. They- they've never said that they wanted to add damages for the ATS claims, but those would be problematic because the- because of the Westfall Act substitution, the claims would be converted into FTCA claims, and then there's no jurisdiction because they haven't exhausted administrative remedies. The- the injury arose in a foreign country. What is the administrative remedy for these folks under the FTCA? Where- where are they supposed to go? And what's the- Well, Your Honor, they haven't presented any sort of claim to the agency, so we think- Is there, like, a regulatory rubric for that, or where- where do you go? Who do you talk to? Your Honor, I'm not sure what the precise process would be for these sorts of claims, and we don't think these statutes were intended to- to provide causes of action for these sorts of claims in the first place, so I don't- You are asserting that they should be exhausting, so I assume you have an idea of where they should do that before they go into court to be told the things you're telling us- Yes, Your Honor. are going to be told. Yes, Your Honor. The point is just that some sort of claim would need to be made before the agency. I was just trying to explain that I'm- I'm not sure exactly what that would look like because this is fairly unprecedented, and it's, you know, an extraordinary lawsuit. And- and just to be clear, we think that we're- If you were someone trying to bring this extraordinary lawsuit, where would you go to exhaust? To the agencies that- that they're suing. So to go to the CIA and the White House and the Department of Defense and just send them a letter, or- I mean, is there any kind of administrative anything? I'm sorry, Your Honor. I don't know how specifically an administrative claim would be brought, but here the plaintiffs haven't tried to bring any type of claim. But in addition, the FTCA waiver of sovereign immunity also doesn't apply because the- the- the alleged injury arose in a- in a foreign country. In addition, their claims are based on international law, not on state law. So again, the FTCA waiver of sovereign immunity wouldn't apply. So for all three of those reasons, if they added a claim for damages for their ATS claims, those would- would not be able to proceed. But just to be clear, we think the most straightforward way for this court to resolve this case is through application of the political question doctrine, because this- this- these claims fall square- squarely within the court's holding in Al-Shifa. But why do you say just to- because we're asking about alternate potentially available grounds, why is it more straightforward to go on a political question rather than standing? I mean, I take it the issue with standing is that there's a question about what would happen in the aftermath. But- Sorry, we feel- I feel that we have very strong standing arguments and statutory arguments as well. I just didn't want to lose sight of the fact that we think that this is a very straightforward political question case that's governed by the court's decision in Al-Shifa, but I was not trying to signal that we are worried about the standing or statutory arguments. If there are no further questions, we think the district court's decision in dismissing should be affirmed. Thank you. Thank you. Mr. Robinson, you had no time remaining, but we'll give you two minutes of rebuttal time. Thank you. Just a couple of points in a sec. One, the- to the extent that there is standing and other issues, the plaintiff should be granted leave to amend and an opportunity to correct that, which did not happen before, given the nature of the decision. Two, this isn't Al-Shifa. This isn't a case where this- or at least it doesn't appear to be at this stage, where clear politically decisions are being questioned. This is a much more operational, much more fact-specific, and the court shouldn't be divested of jurisdiction simply in a sense, an Ipsy-Dixit, we say political question, there it's going. There needs to be more. There needs to be more regular process, more opportunity for the court to decide whether or not there are issues that it can't decide, but still exercising respect for the coordinate branches. Thank you. The case will be submitted.
judges: Brown, Srinivasan, Pillard